IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION


JEFFREY EGGER,

                    Plaintiff,

            vs.                         Civil Action 2:07-CV-1244
                                        Magistrate Judge King

UNUM LIFE INSURANCE COMPANY
OF AMERICA,

                    Defendant.


                         OPINION AND ORDER

        Plaintiff, the son of decedent/insured under a life insurance

policy issued to the decedent, asserts claims of breach of contract

and breach of fiduciary duty.  The parties agree that the policy is

governed by the Employee Retirement Income Security Act of 1974

("ERISA"), 29 U.S.C. § 1001, *et seq.*  With the consent of the parties,

28 U.S.C. § 636©, this matter is now before the Court on *Defendant's*

*Motion for Judgment on the Administrative Record*, Doc. No. 28

("*Defendant's Motion*") and *Plaintiff's Motion for Summary Judgment on*

*the Administrative Record*, Doc. No. 29[1] ("*Plaintiff's Motion*").  For

the reasons set forth below, *Defendant's Motion* is **GRANTED** and

*Plaintiff's Motion* is **DENIED**.

I.      **BACKGROUND**

────────────────

        [1]Although plaintiff characterizes his motion as seeking "summary
judgment" on the administrative record, it is more appropriately captioned as
simply a motion for judgment on the administrative record.  *See Univ. Hosps.*
*v. Emerson Elec. Co.*, 202 F.3d 839, 845 n.2 (6th Cir. 2000) ("[S]ummary
judgment generally is an inappropriate mechanism for adjudicating ERISA claims
for benefits.") (citing *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d
609, 617-19 (6th Cir. 1998)).  Indeed, *Plaintiff's Motion* does not refer to
the summary judgment standard and the evidence is confined to the
administrative record.

## A.    The Policy

Defendant issued an accidental death and dismemberment ("AD&D") policy, policy number CLIGSR17579 ("the Policy"), to policyholder Huntington Bancshares, Inc. ("Huntington"). *Administrative Record*, Doc. No. 15,  UACL00419–UACL00410; UACL00372–UACL00369.[2]  The Policy provides for payment of benefits for a covered loss that results from an injury.  UACL00416.  The Policy defines "injury" as "a bodily injury that is solely caused by external, violent and accidental means and is independent of any other cause."  UACL00416.  The Policy contains certain exclusions, including "any claim for loss that is caused by, contributed to by, or resulting from. . . an attempt to commit or commission of a crime under state or federal law[.]" UACL00412–UACL00413.

Decedent, Karen Egger ("decedent"), was a Huntington employee and an insured under the Policy.  UACL00448, UACL00445–UACL00443. Plaintiff, decedent's son, was named as the sole beneficiary of any benefits to which she was entitled under the Policy.  UACL00445– UACL00443.  The Policy carried AD&D benefits in the amount of $200,000. *Id*.

## B.    The Fatal Vehicle Crash

On September 8, 2006, decedent was driving her vehicle ("the vehicle") on West Henderson Road in Perry Township in Franklin County, Ohio.  UACL00441.  The Traffic Crash Report prepared by the Perry Township Police Department ("the police") describes what happened while decedent was driving:

---

[2]The administrative record, which was filed under seal, is bates-numbered UACL00001 through UACL00460.

> [The vehicle was driving] westbound on West Henderson Road
> just leaving 2 lane[s] down to one lane area. [The vehicle]
> drives left of center over double yellow lines passing
> westbound vehicles. [The vehicle] swerves to the right back
> into the right hand lane to avoid oncoming eastbound
> traffic. [The vehicle] leaves right side of roadway striking
> a utility pole with the right side at 3342 West Henderson,
> continues westbound riding up onto a guardrail on the north
> side of the roadway. [The vehicle] continues west down an
> embankment flipping numerous times before striking a utility
> pole support cable. [The vehicle] continues west striking
> and driving through a tree and rolling to a final rest on
> it's [sic] right side in a directly south orientation.

UACL00438.

At 8:17 a.m., the police received a call regarding decedent's car crash at 3342 West Henderson Road ("the fatal crash" or "the crash"). UACL00436. Police and medical personnel arrived at the scene within eight minutes of the initial call. *Id.* Decedent was pronounced dead at 8:27 a.m. *Id.*

Shortly thereafter, the Perry Township Police Department Accident Investigation Team ("the investigation team") arrived at the scene to investigate. UACL00430. According to the investigation team, the weather conditions were "clear," with a temperature of 63 degrees and the lighting condition was "daylight." *Id.* The road conditions were "dry" and the pavement was "[n]ew [a]sphalt" without any defects. UACL00430-UACL00431. The investigation team found no obstructions to view and noted that "[h]eavy [t]raffic" was present at the time of the crash. *Id.* The investigation team determined that decedent was driving well in excess of the posted 45 mile per hour speed limit when she attempted to navigate a turn while passing other vehicles:

> [The vehicle was driving] westbound on West Henderson Road
> passing multiple vehicles over a double yellow line in a
> left hand curve at an estimated speed in excess of 70 mph.
> Vehicle drove off right (north) side of roadway at 3342 West
> Henderson road. Analysis of grass from right side tires

indicate brakes were applied at this point.  There were no
striations or skid marks on asphalt roadway.  Vehicle's
initial impact on the west side of the property at 3342 W.
Henderson to the right side of [the vehicle] causing slight
damage. [The vehicle] continued west riding up onto ground
imbedded guardrail riding up onto it causing the vehicle to
roll over onto it's [sic] right side as it left the
guardrail and went down into a steep ravine.  Vehicle went
airbourne [sic] crossing a small creek and landing on the
other side of the creek on the upward bank just to the east
of the driveway at 3400 W. Henderson.  Vehicle continued
west, striking a utility pole hold down wire.  Vehicle
continued west up an embankment shearing a pine tree in two
with an approximately 11" diameter.  At this point the
vehicle came to it's [sic] final resting position in a
directly north south position facing direct south on it's
[sic] right side.  The driver was in the drivers [sic] seat
with her seatbelt on.  The vehicle was extensively damaged
on each side and the top. [The vehicle] traveled 406.9 feet
from the point of leaving the roadway until it's [sic] final
rest.  Ground analysis shows that the vehicle rolled and
flipped numerous times which the witness's [sic] also
stated.  The driver Karen A. Egger was pronounced dead at
the scene at 0827 hours by Eugene Thomas from Columbus Medic
#17 from station #11.

UACL00430-UACL00429.

Three eye witnesses confirmed that the vehicle was traveling
"fast" or "extremely fast" when it passed other vehicles during a
curve in the road before decedent lost control and hit the guardrail.
UACL00434-UACL00432.

In light of decedent's actions immediately prior to the crash,
the police concluded that decedent had violated O.R.C. § 4511.31,
which requires an operator of a vehicle to obey roadway signs or
markings that are labeled as no-passing zones.  UACL00441.  In
addition, the police concluded that decedent's "operating [the]
vehicle in [an] erratic, reckless, careless, negligent or aggressive
manner" was a contributing factor in the fatal crash on September 8,

2006. UACL00440.[3]

**C.    The Claims Process**

On January 29, 2007, Huntington submitted a claim on plaintiff's behalf for proceeds of the Policy.  UACL00442-UACL00448.  On February 2, 2007, Carol Dunham, defendant's "Life Benefits Specialist" contacted plaintiff to advise that his claim had been received and that he would be notified as soon as review of the claim was complete. UACL00402-UACL00403.  On February 5, 2007, Ms. Dunham contacted another employee for defendant, Donna Sparks, and "recommend[ed] payment of [the] claim".  UACL00390.  The same day, Ms. Dunham called plaintiff "to determine if he wants survivor support in lump sum or payments."  UACL00393.  Plaintiff did not answer his telephone and no message was left.  *Id*.

The next day, Ms. Sparks responded to Ms. Dunham's recommendation, questioning whether payment was appropriate:

> Per the police report she [decedent] was driving 30 miles over the posted speed limit 75 in a 45 zone.  The police report attrbutes [sic] the accident to erratic, negligent, careless driving.  What about the crime exclusion?

UACL00390.  Thereafter, Ms. Sparks recommended referring the matter to Huntington's legal department "for opinion regarding crime exclusion and insuring clause arguement [sic]."  UACL00389.  On February 22, 2007, this matter was addressed during a roundtable review. UACL00451.

On February 23, 2007, Ms. Dunham spoke with plaintiff, advising him that the claim was not payable and that he would receive a letter

---

[3]A more legible copy of this page of the Traffic Crash Report is attached as page 2 of Attachment C to the *Amended Complaint*, Doc. No. 18.

explaining the reasons for the decision and the appeals provision.
UACL00375.

### D. Defendant's Denial of Plaintiff's Claim

In a letter dated February 27, 2007, defendant formally notified
plaintiff that his claim had been denied for two reasons. UACL00369-
UACL00372. First, defendant determined that decedent's death was not
covered by the Policy's definition of "injury," which is defined as "a
bodily injury that is solely caused by external, violent and
accidental means and is independent of any other cause." UACL00371-
UACL00372. Defendant, relying on the Traffic Crash Report, explained
that decedent's death "was caused by or contributed to by her erratic
and reckless driving," which included speeding and crossing a double
yellow line to pass cars while negotiating a curve. UACL00371.
Defendant therefore concluded that the death "is not a covered loss
under the policy because the loss was not solely caused by external,
violent and accidental means and independent of any other cause as the
above policy language requires." *Id*. Defendant further explained
that decedent's reckless driving rendered the "subsequent fatal crash
foreseeable and, therefore, outside the accidental policy scope of
coverage." *Id*.

Second, defendant determined that even if decedent's death could
be characterized as an "injury" within the meaning of the Policy, the
loss would still be excluded from coverage. *Id*. The Policy
"specifically excludes coverage for losses caused by, contributed to
by, or resulting from an attempt to commit or commission of a crime
under state or federal law." *Id*. Defendant explained that this
exclusion applied because the police reported that decedent violated

6

O.R.C. § 4511.31, which states that

> every operator of a vehicle shall obey the directions of the
> road signs or ma[r]king indicating those portion[s] of any
> state highway where overtaking and passing other traffic or
> driving to the left of the center or center line of the
> roadway would be especially hazardous, as determined by
> safety of persons or property.

*Id.* (quoting O.R.C. § 4511.31) (internal quotation marks omitted).[4]

Defendant further determined that decedent violated O.R.C. § 4511.20,

which provides that "no person shall operate a vehicle on any street

or highway in wilful or wanton disregard of the safety or [sic]

persons or property." *Id.* (quoting O.R.C. § 4511.20) (internal

quotation marks omitted). Defendant took the position that, because

of decedent's careless and reckless driving, she violated one or both

of these statutes. *Id.* Defendant therefore concluded that the crime

exclusion applied and that death benefits were not payable. *Id.*

In the same letter, defendant notified plaintiff that if he

wished to appeal the denial of the claim, he must file a written

appeal, which must be received by defendant "within 90 days after you

[plaintiff] receive the notice of denial." UACL00370. Defendant

specifically advised plaintiff that "[i]f we do not receive your

written appeal within 90 days after you receive the notice of denial,

our claim determination will be final." UACL00369.


**E.    Plaintiff's Attempts to Appeal Defendant's Decision**

On June 15, 2007, plaintiff, through counsel, made a "policy

---

[4]The Court notes that this statute was revised effective September 21,
2006. O.R.C. § 4511.31. Although the current version of this statute
contains wording different than the version in effect at the time of the fatal
crash, the versions are substantively the same.

limit demand together with accrued interest and ask[ed] that payment be made as soon as possible." UACL00358. Defendant received this letter on June 17, 2007. UACL00353. After confirming that plaintiff intended to appeal the denial, defendant responded that plaintiff's appeal was untimely, as it had been received after the 90-day appeals deadline. UACL00356-UACL00357, UACL00353. Defendant therefore advised that "we regret that we cannot review Karen Egger's claim and the original decision on the claim must stand." UACL00353.

On July 3, 2007, plaintiff's counsel acknowledged receipt of defendant's response and advised that plaintiff would be sending medical records, affidavits, articles and an explanation as to why payment should be made. UACL00349. Plaintiff's counsel further advised that if payment was not made, plaintiff "would be forced to file a lawsuit to compel payment on the accidental death policy of $200,000, plus ten percent for the seatbelt being used." *Id*.

On August 30, 2007, plaintiff's counsel argued that defendant's decision to deny benefits was erroneous for a variety of reasons and attached several documents in support. UACL00338-UACL00343. In particular, plaintiff's counsel suggested that decedent did not voluntarily drive her car erratically at a high speed, that she was not suicidal and that "her inability to control the vehicle was an unexplained, unexpected and unforeseeable circumstance." UACL00338-UACL00340.

On September 5, 2007, defendant responded that the request for an appeal dated June 15, 2007 was untimely and that it would not review decedent's file. UACL00072.

**F.    The Instant Litigation**

On October 31, 2007, plaintiff filed his initial complaint in the Court of Common Pleas for Franklin County, Ohio. *Complaint*, Doc. No. 1-3. On December 10, 2007, defendant removed the action to this Court as one arising under federal law, 28 U.S.C. § 1331. *Notice of Removal*, Doc. No. 1. Subsequently, plaintiff filed the *Amended Complaint*, asserting claims of breach of contract and breach of fiduciary duty. The parties have moved for judgment on the administrative record and this matter is ripe for resolution.

## II. STANDARD OF REVIEW

The parties agree that the Policy is governed by ERISA. A challenge to an ERISA plan's denial of benefits is reviewed under a *de novo* standard of review "unless the plan provides to the contrary." *Metro. Life Ins. Co. v. Glenn*, _ U.S. _, 128 S.Ct. 2343, 2348 (2008). "Where the plan provides to the contrary by granting 'the administrator or fiduciary *discretionary authority* to determine eligibility for benefits,' *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989), '[t]rust principles make a *deferential standard* of review appropriate[.]'" *Id.* (quoting *Firestone*, 489 U.S. at 111 (1989)) (emphasis added). This deferential standard is the arbitrary and capricious standard of review. *See*, *e.g.*, *McCartha v. Nat'l City Corp.*, 419 F.3d 437, 441 (6th Cir. 2005).

The parties in this action disagree as to the appropriate applicable standard of review. Plaintiff argues, *inter alia*, that a conflict of interest exists because defendant acted as both the insurer and plan administrator. *Plaintiff's Motion*, p. 8. Because of this conflict of interest, plaintiff contends that the burden "shifted

to [defendant] UNUM to prove to this court that its denial [of benefits] is not tainted by self interest." *Id*. Defendant, however, argues that this Court should apply the arbitrary and capricious standard of review. *Defendant's Motion*, pp. 7-8.

Defendant's argument is well-taken. In this case, the Policy provides that, "[w]hen making a benefit determination under this policy, UNUM has discretionary authority to determine the Insured's eligibility for benefits." UACL00419. Because defendant has discretionary authority, the arbitrary and capricious standard of review applies. *See Metro. Life Ins. Co.*, 128 S.Ct. at 2348. This standard "'is the least demanding form of judicial review of administrative action. . . . When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary and capricious.'" *Evans v. UnumProvident Corp.*, 434 F.3d 866, 876 (6th Cir. 2006) (quoting *Perry v. United Food & Commercial Workers Dist. Unions, 405 & 442*, 64 F.3d 238, 241 (6th Cir. 1995)). Stated differently, "the Court must decide whether the plan administrator's decision was 'rational in light of the plan's provisions.'" *Williams v. Int'l Paper Co.*, 227 F.3d 706, 712 (6th Cir. 2000) (quoting *Daniel v. Eaton Corp.*, 839 F.2d 263, 267 (6th Cir. 1988)). An administrator's decision will be upheld "'if it is the result of a deliberate principled reasoning process, and if it is supported by substantial evidence.'" *Evans*, 434 F.3d at 876 (quoting *Baker v. United Mine Workers of America Health & Retirement Funds*, 929 F.2d 1140, 1144 (6th Cir. 1991)). However, the arbitrary and capricious standard does not require a court to merely rubber stamp the administrator's decision; instead, a court "must exercise review

powers." *Jones v. Metro. Life Ins. Co.*, 385 F.3d 654, 661 (6th Cir. 2004).

The scope of the district court's review of "the denial of benefits is limited to the administrative record available to the plan administrators when the final decision was made." *Marks v. Newcourt Credit Group, Inc.*, 342 F.3d 444, 457 (6th Cir. 2003); *Wilkins v. Baptist Healthcare Sys.*, 150 F.3d 609, 615 (6th Cir. 1998). In reviewing the record and the administrator's determination, the Court will also take into consideration the fact that defendant is acting under a potential conflict of interest because it is both the decision-maker, determining which claims are covered, and the payor of those claims. *See Defendant's Motion*, p. 8; *Metro. Life Ins. Co.*, 128 S.Ct. at 2350-51. However, "conflicts are but one factor among many that a reviewing judge must take into account." *Metro. Life Ins. Co.*, at 2351. The weight that a conflict of interest should receive is determined by case-specific factors. *Id*.

## III. DISCUSSION

Defendant based its denial of benefits on two separate provisions of the Policy. First, decedent's death was not a covered "injury" under the Policy "because the loss was not solely caused by external, violent and accidental means and independent of any other cause[.]" UACL00371. Second, even if the loss could be characterized as a covered "injury," the claim would still be denied because the Policy's crime exclusion applied. *Id*.

The Court must decide whether this decision was arbitrary and capricious and thus should be overturned. Based on the administrative record, and applying the deferential standard of review, the Court

concludes that defendant did not act arbitrarily or capriciously in denying plaintiff's claim for benefits.

## A. Breach of Contract

### 1. Injury caused by "accidental means" and "independent of any other cause"

As discussed *supra*, the Policy defines "injury" as "a bodily injury that is solely caused by external, violent and accidental means and is independent of any other cause." UACL00416.

#### a. Whether decedent's death was "accidental"

The parties disagree whether decedent's death was "accidental" within the meaning of the Policy. *Defendant's Motion*, pp. 9-12; *Plaintiff's Motion*, pp. 9-12. The Policy does not specifically define the term "accidental." UACL00410-UACL00419. Courts refer to federal common law when an ERISA plan does not define a particular term. *Cf.*, *Jones*, 385 F.3d at 664. *See also Kovach v. Zurich Am. Ins. Co.*, No. 1:07-2584, 2008 U.S. Dist. LEXIS 104605, at *14 (N.D. Ohio Sept. 30, 2008). The Sixth Circuit has acknowledged that "several federal courts 'reviewing ERISA cases have recognized that foreseeable harm resulting from an insured's intentional actions is not accidental.'" *Lennon v. Metro. Life Ins. Co.*, 504 F.3d 617, 622 (6th Cir. 2007) (quoting *Cates v. Metro. Life Ins. Co.*, 14 F. Supp.2d 1024, 1027 (E.D. Tenn. 1996), *aff'd by Cates v. Metro. Life Ins. Co.*, No. 96-6600, 1998 U.S. App. LEXIS 14975 (6th Cir. June 30, 1998)). *See also Jones*, 385 F.3d at 665 (finding evidence of an accidental injury where insured presented evidence that injury was neither subjectively expected nor objectively foreseeable); *Cates*, 1998 U.S. App. LEXIS 14975, at *7-8 (affirming grant of summary judgment where "'act of driving while so

12

impaired[5] rendered the infliction of [serious] injury or death
reasonably foreseeable and, hence, not accidental as contemplated by
the plan" was not irrational in light of the plan's provisions);
*Kovach*, 2008 U.S. Dist. LEXIS 104605, at *15 ("The Court finds that it
was not arbitrary and capricious for Defendant to rely on decisions
within the Sixth Circuit applying a reasonably foreseeable test [to
define "accident"].").  Therefore, where an insured's "conduct
constituted reckless and entirely unwarranted risk to himself, it [is]
not arbitrary and capricious for [a plan administrator] to treat the
injury as nonaccidental under the terms of its policy." *Lennon*, 504
F.3d at 624.

Here, defendant interpreted "accidental" to exclude from coverage
"losses that are the direct and foreseeable consequence of the
insured's actions."  UACL00371.  As discussed *supra*, this
interpretation is consistent with Sixth Circuit authority. *See also
Moos v. Square D Co.*, 72 F.3d 39, 42 (6th Cir. 1995) ("[Courts] grant
plan administrators who are vested with discretion in determining
eligibility for benefits great leeway in interpreting ambiguous
terms.").  In reaching the determination that the death was not
"accidental," defendant relied upon evidence referred to by law
enforcement officials that established the circumstances surrounding
decedent's fatal crash.  UACL00371.  Defendant noted that the weather
conditions were "clear," the road conditions were "dry" and the

---

[5]This Court sees no reason to distinguish cases where the beneficiary or
insured was driving while intoxicated.  Drunk driving creates the risk that
the impaired driver will drive erratically or recklessly and create
unreasonable risks to the impaired driver and others on the road.  Here,
decedent drove in a dangerous and erratic manner even though she was not
intoxicated.

lighting conditions were "good." *Id.* Decedent was driving in excess
of 70 miles per hour in a no passing zone. *Id.* While speeding 30
miles per hour over the posted speed limit, decedent attempted to pass
other vehicles in heavy traffic while negotiating a curve in the road.
*Id.* Decedent drove left of center before swinging back into her lane,
left the road, hit a guardrail, rolled the vehicle and struck a
utility pole and tree. *Id.* Defendant noted that the police reported
that decedent's "reckless" and "negligent" driving caused, or
contributed to, her death. *Id.* Based on these police findings,
defendant determined that decedent's fatal accident was "foreseeable
and, therefore, outside the accidental policy scope of coverage." *Id.*

Applying a deferential standard of review, the Court cannot say
that defendant's determination was arbitrary and capricious. The
Court agrees that it is reasonably foreseeable that a fatal crash may
result when a driver is speeding in excess of 70 miles per hour around
a turn while trying to pass other vehicles in a no passing zone with
heavy traffic. UACL00371, UACL00429-UACL00431, UACL00438, UACL00440.
Decedent's driving was reckless and created an unwarranted risk to
herself and to other drivers. *Lennon*, 504 F.3d at 624. Accordingly,
defendant's conclusion was reasonable and rational in light of the
Policy's provisions. *Id.* *See also Williams*, 227 F.3d at 712.

> **b. Whether decedent's death was "independent of any other cause"**

Similarly, the Court agrees that, based on the record above,
decedent's death was not "independent of any other cause" as required
by the Policy. UACL00416. The Traffic Crash Report specifically
concluded that decedent's erratic and reckless driving caused, or

14

contributed to, her death.  UACL00440.  Defendant's reliance on this conclusion, particularly in light of other details contained in the Traffic Crash Report and in the investigation team's findings, was rational.  Accordingly, because defendant reasonably concluded that decedent's death was not "accidental" or "independent of any other cause" within the meaning of the Policy, the Court cannot say that defendant's denial of benefits was arbitrary or capricious.

Plaintiff's arguments do not change this result.  First, plaintiff argues that defendant was in a "perpetual conflict of interest" and the burden therefore shifted to defendant to prove that its denial of the claim "is not tainted with self interest." *Plaintiff's Motion*, p. 8.  To the extent that plaintiff argues that the burden shifted to defendant, this argument is without merit for the reasons discussed *supra*; the deferential arbitrary and capricious standard applies.  Here, defendant functioned under a conflict of interest, but this conflict is but one of many factors for this Court to consider.  *See Metro. Life Ins. Co.*, 128 S.Ct. at 2351.  A conflict of interest should prove more important "where circumstances suggest a higher likelihood that it affected the benefits decision, including, but not limited to, cases where an insurance company administrator has a history of biased claims administration."  *Metro. Life Ins. Co.*, 128 S.Ct. at 2351.  Other cases have noted that this defendant has a history of erroneous and arbitrary benefit denials.  *See*, *e.g.*, *id*. at 2354-55 (Roberts, J., concurring) (citing *Radford Trust v. First Unum Life Ins. Co.*, 321 F. Supp.2d 226, 247 (D. Mass. 2004)).  Even assigning a proper weight to this conflict of interest, however, the Court is not persuaded that defendant's decision in this case was

15

arbitrary or capricious. Plaintiff suggests that self-dealing existed because Ms. Dunham initially decided that his claim should be paid, but that this decision was reversed after the matter had been referred to the legal department for a roundtable discussion. *Plaintiff's Motion*, pp. 2-3. This Court disagrees. The record reflects that after less than a week of review, one analyst, Ms. Dunham, concluded that the claim should be paid. UACL00390, UACL00402-UACL00403, UACL00442-UACL00448. The fact that another analyst, Ms. Sparks, suggested that the legal department review the claim because she questioned the propriety of the claim does not establish that a conflict of interest played any role whatsoever in defendant's decision. UACL00389-UACL00390. This is particularly so where, as discussed *supra*, defendant's determination was rational in light of the police findings and the Policy.

Second, plaintiff complains that defendant "refused" to review "over 300 pages of affidavits, medical records, etc." because these materials were submitted after "a fictitious '90-day appeal period.'" *Plaintiff's Motion*, pp. 3-4, 7, 16. More specifically, plaintiff complains that "no contract or 'plan summary' in this case contains a '90-day appeal' limitation." *Id*. at 7. This Court disagrees. The summary of the Policy provides the following:

Claims Review Procedure

[I]f you or your beneficiary desire further review [after a denial], here are the steps you should follow:

1.  You may file a written request for reconsideration with the insurance company within 60 days after you receive notice of the denial of the claim. During the period your request is pending (including the 60 days you have to file for reconsideration), you may review the appropriate plan documents and submit issues and

16

comments to the insurance company.

UACL00028.  In its letter denying plaintiff's claim, defendant specifically advised plaintiff that if he wished to appeal a denied claim, defendant "must receive this appeal within 90 days after you receive the notice of denial."  UACL00370.  *See also* UACL00369.  Based on this record, not only did the summary provide a deadline for filing appeals, but defendant provided plaintiff with an additional thirty days to appeal the February 27, 2007 decision.  This deadline conforms to ERISA.  *See* 29 C.F.R. § 2560.503-1(h)(2)(I).[6]  *Cf. Dietelbach v. Ohio Edison Co.*, No. 02-3422, 76 Fed. Appx. 84 (6th Cir. Sept. 19, 2003) (affirming trial court's judgment in favor of insurer where insured failed to appeal benefits denial within 90 days, as was required by the plan).  Plaintiff cites to no contrary authority suggesting that the appeal deadline in this case was improper.  Instead, plaintiff argues that the 60-day deadline referred to in the summary contrasted with the 90-day deadline referred to in the letter denying benefits "creates a state of confusion for the grieving beneficiary."  *Plaintiff's Response to Defendant's Motion for Summary Judgment*, Doc. No. 31 ("*Plaintiff's Response*"), p. 4.  To the extent

---

[6]This section provides, in pertinent part:

(h) Appeal of adverse benefit determinations. . . .

(2) Full and fair review.  Except as provided in paragraphs (h)(3) and (h)(4) of this section, the claims procedures of a plan will not be deemed to provide a claimant with a reasonable opportunity for a full and fair review of a claim and adverse benefit determination unless the claims procedures--

(I) Provide claimants at least 60 days following receipt of a notification of an adverse benefit determination within which to appeal the determination[.]

29 C.F.R. 2560.503-1(h)(2)(I).

that plaintiff suggests that his confusion over the actual deadline caused him to miss the appeals deadline, this argument is without merit. There is no dispute that plaintiff failed to file an appeal within the specified appeals period. UACL00358. Indeed, plaintiff admits that he "was *only* ten days late submitting a request for appeal." *Plaintiff's Response*, p.4 (emphasis added). Therefore, based on plaintiff's own admission, he missed both deadlines regardless of whether he thought it was a 60-day deadline or a 90-day deadline. Based on this record, it was not arbitrary or capricious for defendant to refuse to consider materials submitted by plaintiff on August 30, 2007, months after the appeals deadline had passed.[7] UACL00338-UACL00343.

Finally, plaintiff asks, "[i]f the courts ordered UNUM to pay death benefits to the Critchlow family for the death of the 32 year old male Critchlow who died during an intentional act of 'autoerotic asphyxiation,'. . . how can any court allow Defendant" to deny plaintiff's claim? *Plaintiff's Motion*, p. 11 (citing *Critchlow v.*

---

[7]This material included medical records that, defendant argues, actually support its decision. *Defendant's Brief in Opposition to Plaintiff's Motion for Judgment on the Administrative Record*, Doc. No. 30 ("*Defendant's Opposition*"), pp. 4-5. Specifically, the records establish that, in the weeks leading up to decedent's crash, a physician had warned plaintiff not drive without further testing. *Id.* (citing UACL00178, UACL00259, UACL00312). Decedent's decision to drive in defiance of her doctor's order further supports defendant's conclusion that the crash was reasonably foreseeable.

In addition, plaintiff attaches questionnaire responses completed by people who knew decedent and who stated that decedent had manifested no suicidal ideation. UACL00328-UACL00337. This information is absolutely irrelevant because defendant did not premise its denial of benefits on a suicide exclusion.

Finally, plaintiff complains that defendant refused to consider the autopsy report, *Plaintiff's Motion*, pp. 8, 11-12, 17, arguing that a low blood sugar level rendered decedent "nearly comatose." *Id.* Defendant correctly points out that plaintiff offers nothing other than his own speculation that decedent was "nearly comatose," which is wholly inadequate to establish that defendant's decision was arbitrary or capricious.

*First UNUM Life Ins. Co. of Am.*, 378 F.3d 246 (2d Cir. 2004));
*Plaintiff's Response*, p. 5 (same). *Critchlow* is distinguishable. In
that case, the court engaged in *de novo* review, whereas the
deferential arbitrary and capricious standard applies to this case.
Therefore, the Court concludes that defendant's decision to deny
benefits because decedent did not suffer an "injury" within the
meaning of the Policy was neither arbitrary nor capricious.

### 2. The Policy's Crime Exclusion

Because it was not arbitrary and capricious for defendant to find
that decedent's death was not a covered "injury" within the meaning of
the Policy, the Court need not reach defendant's argument that the
Policy's crime exclusion applied.

### B. Breach of Fiduciary Duty

Plaintiff also asserts a claim for breach of fiduciary duty.
Defendant argues that, because an adequate remedy already exists for
his claim for benefits, plaintiff's alternative claim for breach of
fiduciary duty cannot proceed. *Defendant's Motion*, p. 16.

This Court agrees. ERISA provides that a participant or
beneficiary may bring a civil action to recover benefits, enforce
rights under a plan or obtain other equitable relief. 29 U.S.C. §
1132(a)(3). However, the Supreme Court "clearly limited the
applicability of § 1132(a)(3) to beneficiaries who may not avail
themselves of § 1132's other remedies. *Wilkins v. Baptist Healthcare
Sys., Inc.*, 150 F.3d 609, 615 (6th Cir. 1998) (citing *Varity Corp. v.
Howe*, 516 U.S. 489, 512 (1996)). Therefore, where § 1132 provides a
remedy for an alleged injury that allows a participant or beneficiary

to challenge a denial of benefits, "he does not have a right to a cause of action for breach of fiduciary duty pursuant to § 1132(a)(3)." *Id.* at 614-15. To permit otherwise would allow "ERISA claimants to simply characterize a denial of benefits as a breach of fiduciary duty." *Id.* at 616.

However, "under some circumstances an ERISA plaintiff may simultaneously bring claims under both § 1132(a)(1)(b) and § 1132(a)(3)." *Gore v. El Paso Energy Corp. Long Term Disability Plan*, 477 F.3d 833, 839 (6th Cir. 2007) (citing *Hill v. Blue Cross and Blue Shield of Mich.*, 409 F.3d 710 (6th Cir. 2005)). The Sixth Circuit has permitted such simultaneous claims where a benefits award would not provide complete relief to the claimant or where the claim could not have been characterized as a denial of benefits claim. *See Hill*, 409 F.3d at 717-18; *Gore*, 477 F.3d at 841-42.

In the case *sub judice*, there is nothing before the Court to suggest that plaintiff's breach of fiduciary duty claim is anything other than an alternative articulation of plaintiff's claim for denial of benefits. Accordingly, his claim for breach of fiduciary duty is without merit. *See Wilkins, Inc.*, 150 F.3d at 614-16.


**WHEREUPON**, *Defendant's Motion for Judgment on the Administrative Record*, Doc. No. 28, is **GRANTED** and *Plaintiff's Motion for Summary Judgment on the Administrative Record*, Doc. No. 29, is **DENIED**.

**The Clerk shall enter judgment in favor of defendant.**


September 28, 2009                    *s/Norah McCann King*
                                      Norah M$^c$Cann King

20

United States Magistrate Judge